1 DENNIS K. BURKE
United States Attorney
2 District of Arizona
Jonathan B. Granoff
3 Assistant United States Attorney
United States Courthouse
4 405 W. Congress, Suite 4800
Tucson, Arizona  85701
5 Telephone:  (520) 620-7300
Jonathan.Granoff@usdoj.gov
6 Attorneys for Plaintiff

7                    UNITED STATES DISTRICT COURT

8                        DISTRICT OF ARIZONA

9 United States of America,          )
                                     )      NO. CR 08-0744-TUC-CKJ (JCG)
10              Plaintiff,            )
                                     )      **GOVERNMENT'S NOTICE OF**
11      v.                           )      **INTENT TO SEEK UPWARD**
                                     )      **DEPARTURE AND RESPONSE TO**
12 Chris Nero,                       )      **THE DEFENDANT'S**
                                     )      **SENTENCING MEMORANDUM**
13              Defendant.           )
                                     )
14 _____    )

15

16      The government, by and through its attorneys, Dennis K. Burke, United States

17 Attorney for the District of Arizona, and Jonathan B. Granoff, Assistant U.S. Attorney,

18 hereby submits its response to the presentence report (PSR) and sentencing memorandum.

19 In support thereof, the following is stated.

20      I. Preliminary Summary:

21      The defendant was involved in a large scale mortgage fraud conspiracy.  A mortgage

22 fraud scheme can generally occur in two different ways. One type of mortgage fraud scheme

23 can be termed fraud for housing.  In such a scheme, the loan applicant merely makes material

24 misrepresentations to the lender in order to obtain a property that will be used as a primary

25 residence.  The second type of mortgage fraud scheme involves fraud for profit.  Although

26 there are many variations in such a scheme, one way is for the perpetrators to recruit other

1   "straw buyers" to purchase properties at the highest possible price.  The goal of such a

2   conspiracy is to obtain money by fraud with the coconspirators dividing the proceeds

3   amongst themselves after the fraudulently obtained loans are received from the lenders.

4   While a fraud for housing scheme is a serious crime, one who commits a fraud for profit

5   scheme is a far worse criminal.  The defendant participated in such a cash back scheme.  The

6   losses to the lenders as a result of this criminal conduct were significant.  PSR ¶¶ 10, 11.  The

7   vast majority of the real estate properties that were purchased with these fraudulent loans

8   went into foreclosure.  PSR ¶ 10.  Defense counsel appears to acknowledge the defendant's

9   involvement in this conduct on pages two and three of her sentencing memorandum.  *See*

10  Doc. # 261, *Defendant Nero's Sentencing Memorandum* at p. 2-3.[1]  However, defense

11  counsel suggests as an excuse, that the defendant acted on the "advice of counsel" and others

12  in the real estate industry to commit these acts.  Given the facts outlined in the PSR, the

13  excuse proffered for the defendant's actions is not credible.   The government submits that

14  a lengthy prison sentence is justified for this defendant.  Although the defendant pleaded

15  guilty to felony tax charges, the court should not hesitate to impose such a sentence in this

16  case.

17        This type of sentence is necessary to deter the defendant and others from committing

18  these acts in the future.   Mortgage fraud is a crime that extends beyond the losses to the

19  lenders.  It is a crime that impacts the neighborhoods where the foreclosures occur.  Those

20  who have committed mortgage fraud are partially to blame for the economic downturn over

21  the past several years.  Mortgage fraud is a crime that threatens the financial security of this

22  nation.  Foreclosures lead to vacant houses.  These foreclosures lead to decreased home

23

24

25        [1]  On October 28, 2010, the defendant's attorney filed a motion to withdraw as counsel
    claiming in part that the defendant disagrees with numerous assertions she has advanced in his
26  sentencing memorandum.  Defense counsel has also requested leave to withdraw her sentencing
    memorandum.

1   prices in the neighborhoods.  Legitimate people who must sell their homes see the values of

2   their homes plummet.  These legitimate sellers must lower the prices of their homes if they

3   wish to sell them in order to compete with the lower foreclosure sales prices.  During the

4   time when the home prices increased as a result of fraudulently inflated properties, property

5   owners also had to shoulder the burden of higher and improperly inflated property taxes.

6          Defendant Nero's culpability extends beyond the cash back mortgage fraud scheme

7   he helped perpetrate.  As the factual basis of his plea agreement demonstrates, between the

8   years 2001 to 2007, the defendant received approximately $2.7 million dollars in total gross

9   income.  The defendant received such income either directly, through others or his company.

10  The vast majority of this money represented proceeds he received through the mortgage fraud

11  transactions in which he participated.  Some of this money was used by the defendant to help

12  continue his crime spree, (i.e., paid to straw buyers, mortgage payments for the fraudulently

13  obtained properties or paid to defendant Fife).  The defendant further failed to file any

14  income tax return either personally or through his corporation for tax years 2001 to 2008.

15  In his "acceptance of responsibility" to the probation department, the defendant stated that,

16  "he was aware that he had to file tax returns but for a time believed the federal government

17  did not have jurisdiction to collect taxes." PSR ¶ 19.  This proffered excuse concerning why

18  he did not file tax returns is unbelievable.  The defendant's actions coupled with his criminal

19  history prove that he has a complete and utter disregard for the laws of this nation.   The

20  government submits based on the additional argument set forth below, that a sentence of at

21  least   60   months   concurrent   on   each   count   is   justified   in   this   case.

22

23  II. Factual Objections:

24  a. Paragraph 13-16 of the PSR:

25          Paragraph 13 of the PSR sets forth the loss calculations relating to the case.  Property

26  #3 identifies a loss amount of $29,904.20 for the 546 E. Agave Drive residence to Nova

1   Home Loans.  The loss amount was actually greater.  The loss to Nova for this property

2   should be at least $119,694.80.  Additionally, the probation report sets forth a loss to Barkley

3   Mortgage and Mirad Financial Group of $110,500 and $44,412 respectively.  *See* PSR §12,

4   property #9.    This  is incorrect.  The Barkley and Mirad losses are $44,412 and $92,500

5   respectively, totaling $136,912.

6         Additionally, the probation department states that Everbank sustained a loss relating

7   to property 21(relevant conduct) for 3407 E. Rockwood.  This is incorrect.  Everbank did not

8   sustain a loss relating to this property.  Everbank sold this loan to UBS Special Servicing

9   Group, now known as Rushmore Loan Management Services before the loss was incurred

10   for this loan.

11         Government counsel received additional information that the loss relating to property

12   #10 may have been sustained by Deutsche Bank.  Government counsel has received

13   information that the loss for the two loans relating to this property claimed by the lender may

14   have been $231,725.45 and $193,727.44.  The government has received this information

15   from Wells Fargo, the entity that serviced the loans.

16         According to Federal Deposit Insurance Corporation (FDIC), it assumed the losses

17   relating to the Long Beach and IndyMac Mortgage Service loans (uncharged conduct loans).

18   The actual loss amounts for all of these loans have not yet been received for restitution

19   purposes.  However, counsel received a letter from the FDIC detailing these losses relating

20   to property #27 and #30.  According to the FDIC, it received a $56,071.44 loss relating to

21   property #27 and a $361,859.61 relating to property #30.  Additionally, government counsel

22   is awaiting actual loss figures from the FDIC relating to properties #25 and property #29.

23         The PSR identifies the lender for property #28 as Axis Mortgage & Investments.  Axis

24   Mortgage no longer exists.  Biltmore Bank of Arizona should be replaced as the listed victim

25   for property #28.

26

**1**   III. Basis for Upward Departure§ 5K2.21:

**2**       Although not recommending a departure, the probation department identifies §

**3**   5K2.21 of the sentencing guidelines as a basis that may warrant an upward departure.  This

**4**   section provides for an upward departure to reflect "the actual seriousness" of charges that

**5**   are dismissed as part of a plea agreement.  *See* § 5K2.21 U.S.S.G. (2009 ed.).  In this case,

**6**   probation has determined that had the defendant been convicted of the charges in the

**7**   underlying indictment, his sentencing range could have been 78 to 97 months in prison.  The

**8**   government's recommendation of 60 months would equate to a three level upward departure

**9**   (using the felony tax guideline calculations) and a guideline range of 51 to 63 months.  Given

**10**  the totality of the defendant's conduct in the PSR, a three level departure is certainly

**11**  reasonable under the circumstances of this case.  Such a departure would still be significantly

**12**  less than the guidelines the defendant would have faced had he been convicted of the

**13**  underlying charges in the indictment.

**14**

**15**  IV.  Recruiting Straw Buyers to "Invest" in Real Estate.

**16**       During the course of the mortgage fraud conspiracy, the defendant generally recruited

**17**  straw buyers who were financially unsophisticated and had good credit.  The defendant was

**18**  able to lure these individuals into using their credit to purchase the properties by promising

**19**  them money.  PSR ¶ 9.  For example, one of the straw buyers was an individual named Ken

**20**  Martin.  The defendant lured Mr. Martin and his wife into purchasing two properties.  He

**21**  explained that the Martins could purchase a house and make money once the house had been

**22**  purchased.  The defendant promised to make the mortgage payments.  He also stated that the

**23**  Martins would not have to do anything.  The defendant stated that after a period of time, they

**24**  would sell the houses and split the proceeds.  The defendant instructed Mr. Martin to obtain

**25**  a business license relating to his "computer business."  The defendant also paid for the

**26**  license.  In reality, this license was purchased as a front to assist in obtaining a loan.  The

1 defendant promised to pay the Martins $20,000 to buy the property.  After the purchase of

2 the first property, Mr. Martin received a cashier's check for $10,000 from Mr. Kram.

3       Relating to the first house Mr. Martin purchased, (E. Placita Las Gracias), the

4 defendant stated he had a renter for this property.  However, the defendant actually moved

5 into this home without Mr. Martin's knowledge.  Mr. Martin stated that the defendant made

6 a few payments on the house and then stopped making the payments.  The Martins had to sell

7 their own home and move into this house because they couldn't afford to make mortgage

8 payments on multiple residences.

9       Shortly after the purchase of the first property, the Martins purchased N. Vista Del La

10 Cima.  The defendant promised to pay them $20,000 for this purchase.  This amount included

11 the $10,000 that the defendant owed them from the first purchase.  The Martins were

12 instructed by the defendant to use a different mortgage broker.  Martin received a $5,000

13 cashiers check from Chris Kram for the purchase of this house.  According to Mr. Martin,

14 the defendant also promised a renter for this property.  Mr. Martin later discovered that the

15 defendant's ex-wife, Suppee Anderson, was actually living at the residence.  When Mr.

16 Martin began to receive phone calls from the lender, he went to this house and discovered

17 that Ms. Anderson was living at the property.  Ultimately, according to Mr. Martin, he paid

18 approximately $90,000 in mortgage payments until they lost the two properties and their own

19 home because they could not continue to make payments.

20       The above example demonstrates the serious nature of the criminal conduct by this

21 defendant.  This is just one example of how the defendant took advantage of other human

22 beings to their financial detriment and for the defendant's own private financial gain.

23

24

25

26

1   V. Collateral Consequences to the Neighborhoods from the Mortgage Fraud Scheme:

2       The collateral consequences to the neighborhoods that suffered as a result of the

3   mortgage fraud scheme should be considered as an aggravating factor in sentencing.  The

4   foreclosures that occurred in these neighborhoods were a direct result of the fraud.  The

5   defendant knew or should have known that the straw buyers would be unable to afford the

6   properties that they purchased. Part of the mortgage fraud scheme was to use the same straw

7   buyer to purchase multiple properties within a short time frame so the lenders would be

8   unaware that the straw buyers had recently purchased another property.  These straw buyers

9   had no intent to reside at the properties as a primary residence.  The defendant was aware of

10  these facts.  The defendant should also have been aware of the negative impact of foreclosed

11  homes on the neighborhoods that were victimized as a result of this fraud scheme.  The court

12  should consider these facts as factors that justify an enhanced sentence.

13

14  VI. The Defendant's Past Criminal History:

15      The defendant is a criminal history Category III. PSR ¶ 44.  As the PSR reflects, he

16  is no stranger to the criminal justice system.  At the age of 20, in 1987, he was convicted for

17  felony drug trafficking relating to the attempted purchase of 1 kilogram of cocaine.  PSR ¶

18  30.  It is reported that during the actual transaction, the defendant and another individual

19  were carrying loaded firearms.  *Id.*  For this offense, the defendant received a term of

20  probation.

21      The defendant received his second felony conviction in 1992 for Furnishing Obscene

22  or Harmful Items to a Minor.  PSR ¶ 33.  He also received probation for this offense.  In

23  addition, the defendant has been convicted for misdemeanor theft in 1992 and passing a

24  worthless check in 2000.  PSR ¶¶ 34, 35.  He has three other arrests for issuance of a bad

25  check that did not result in conviction in 1997, 2000, and 2001.  He also has four prior DUI

26  convictions.  PSR ¶¶ 31, 32, 39, and 42.  In 2009, he was convicted for practicing real estate

1   without a license. PSR ¶ 41. Although the conduct involved in that case might be considered

2   related to the mortgage fraud scheme, the charge of practicing real estate without a license

3   is a separate criminal act apart from that scheme.

4

5   VII. Other Criminal Conduct:

6       In March, 2006, according to case reports, it is alleged that the defendant committed

7   an armed robbery.  PSR ¶ 47.  According to the victim, he gave the defendant $8,000 after

8   the victim was held at gun point by the defendant. *Id.*  The government's disclosure reflects

9   that at the time of this incident, the alleged victim reported that he was confined in a wheel

10  chair.  *See* Government's disclosure, witness statements at p. 31.   It appears that the

11  defendant was never arrested, charged or convicted in connections with these allegations.

12  *Id.*

13      In April, 2008, the defendant victimized other individuals.  PSR ¶ 48.  These victims

14  loaned the defendant approximately $153,000.  PSR ¶ 48.  They expected to receive their

15  money back from the defendant in addition to a significant return on their investment.

16  However, the defendant took their money and never paid them back. *Id.*

17      In addition, the domestic violence related allegations set forth in paragraphs 45 and

18  46 of the PSR are serious and disturbing.  PSR ¶¶ 45, 46.  These are other aggravating

19  factors, that the court may consider in sentencing this defendant.

20

21  VIII.  Post-Indictment Conduct:

22      The government's disclosure revealed that the defendant again lured other victims into

23  loaning the defendant money without repaying it.  Government's disclosure "witness

24  statements" pgs. 173-176.   On or about July 21, 2008,  Michael and Elma Kolakowski

25  loaned the defendant $45,000.  The Kolakowskis stated that they borrowed this money from

26  lines of credit with three different banks.  According to the Kolakowskis, a promissory note

1   was written on July 21, 2008.  Per the Kolakowskis, according to the terms of a promissory

2   note, the defendant and another in individual were supposed to repay the Kolakowskis in

3   addition to an $8,000 interest payment within 45 days.  However, similar to the allegations

4   in paragraph 48 of the PSR, the defendant took their money and never paid them back.

5

6   IX. Consideration of Sentencing Factors in 18 U.S.C. § 3553(a):

7         Defense counsel has attempted to address some of the factors the court must consider

8   before imposing sentence.  The government submits that a sentence of 60 months is a fair and

9   just sentence considering the factors outlined in 18 U.S.C. § 3553(a).  This type of sentence

10  adequately considers the need for the sentence to promote respect for the law, provide just

11  punishment and adequately deter the defendant and others from committing these criminal

12  acts.  The government's recommended sentence also considers the need for such sentence

13  to protect the public from this defendant.

14        Defendant attempts to offers as mitigation that he relied on other professionals in the

15  industry in "good faith."  *See* Defendant's Sentencing Memorandum at pgs. 10-11.  This

16  excuse is not credible given that no legitimate professional would suggest that committing

17  fraud to obtain a loan would be proper.  And, even if a professional person were to give such

18  advice, it would be unreasonable for the defendant to have relied on that advice.

19

20  X. The Need to Avoid Unwarranted Sentence Disparity:

21        The defendant also attempts to suggest that those who are really responsible for the

22  fraud scheme are not before the court.  *See* Defendant's Sentencing Memorandum at p. 5, 12.

23  It appears that the defense counsel is attempting to blame the financial institutions for the

24  scheme perpetrated by the defendant and his coconspirator.  *Id*.  The court should reject this

25  argument.  The facts in the PSR demonstrate that the defendant was one of the main

26  orchestrators in this scheme.  The lenders did not make the material false statements to obtain

1   these loans.   The defendant should not get a free pass because the bank's lending practices

2   during this time period were not adequate.  The defendant's sentence should not be reduced

3   because some hypothetical person with higher culpability did not get prosecuted. The

4   defendant used these lending practices at the time to further his fraud scheme to fill his

5   pockets with money to which he was not entitled.  He further failed to file income taxes or

6   declare even one penny of income for a period of seven years.  He should be sentenced

7   accordingly for his own actions.

8       The defendant also refers to the case of *United States v. Crandell*, CR08-255-PHX-

9   GMS.  *See* Defendant's Sentencing Memorandum at pgs. 3, 13.   The defendant appears to

10   compare the defendant's circumstances to defendant Jake Whitman in the *Crandall* case.  Mr.

11   Whitman received a 10 month sentence in that case.  Mr. Whitman was also a criminal

12   history category I.  Although counsel is correct in stating that Mr. Whitman was a leader of

13   that mortgage fraud conspiracy, Mr. Whitman pleaded guilty and was prepared to testify at

14   trial against his codefendant.   *See* CR08-255, doc. # 236, Government's Motion for

15   Downward Departure Pursuant to U.S.S.G. § 5K1.1, And Sentencing Recommendation

16   (hereinafter referred to as "Government's Motion.").   In the government's motion for

17   downward departure, the government characterized Mr. Whitman as a "star government

18   witness[.]" Government's Motion at p. 4.   The government further proffered that "If

19   Whitman had testified on behalf of the government, his testimony would have been

20   devastating against any of the other co-defendants.  Moreover, Whitman's candid interviews

21   with the government likely contributed to Crandell's decision to plead guilty."   *Id.*

22   Defendant Crandell, ultimately pleaded and received a sentence of 62 months in prison.  The

23   government recommended a 14-level downward departure for Mr. Whitman because of the

24   substantial assistance he provided.  Government's Motion at p. 5.

25       The defendant, Mr. Nero, is certainly not similarly situated to Mr. Whitman.  Mr. Nero

26   did not provide substantial assistance in the prosecution of others.  He did not enter into a

1  cooperation plea agreement with the government. He did not agree to testify against other

2  coconspirators.  He was not the government's star witness.   Defense counsel's attempt to

3  compare Mr. Nero to Mr. Whitman should be rejected.

4

5  XI.  Conclusion:

6      The government would respectfully request that the court, in the interests of justice,

7  impose the 60 month sentence recommended by the government

8      Respectfully submitted this 29th day of October, 2010.

9

10                              DENNIS K. BURKE
                                United States Attorney
11                              District of Arizona

12                              s/Jonathan B. Granoff

13                              Jonathan B. Granoff
                                Assistant U.S. Attorney
14

15

16

17

    A copy of the foregoing has been served electronically or by other
18  means this   29th day of October,2010 to:

19  Andrea Matheson, Esq. counsel for Mr. Nero

20  U.S. Probation

21

22

23

24

25

26